IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WESLEY MAY,**

Petitioner,

v.

CIVIL ACTION NO. 5:11-CV-82
(Judge Stamp)

**DAVID BALLARD, Warden
Mount Olive Correctional Complex,**

Respondent.

## REPORT AND RECCOMENDATION THAT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, PETITIONER'S MOTION TO AMEND BE DENIED, AND PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254 BE DENIED AND DISMISSED WITH PREJUDICE

### Introduction

On June 10, 2011, Petitioner filed a petition for federal habeas relief under 28 U.S.C. § 2254. (Doc. No. 1). On September 13, 2011, Petitioner filed a motion to supplement his petition. (Doc. No. 14). The motion was granted on September 14, 2011. (Doc. No. 15). Respondent filed an answer to the petition, along with a motion for summary judgment, on October 13, 2011. (Doc. No. 17; Doc. No. 19). Petitioner filed a reply on January 6, 2012. (Doc. No. 37). On June 7, 2012, Petitioner filed a motion to supplement his petition. (Doc. No. 38). On June 12, 2012, Respondent filed an objection to the motion. (Doc. No. 39).

### Procedural History

#### A. Conviction and Sentence

On October 16, 2002, Petitioner was indicted on the following charges: three counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust to a child, in violation of W. Va. Code § 61-8D-5(a) (counts one, two, and three); one count of distributing

1

and exhibiting material depicting minors engaged in sexually explicit conduct, in violation of W. Va. Code § 61-8C-3 (count four); and one count of distribution and display to a minor of obscene matter, in violation of W. Va. Code 61-8A-2(a) (count five). (Doc. No. 19-1).

On October 3, 2003, Petitioner was convicted of counts one, two, and four. (Doc. No. 19-2). By an order entered January 9, 2004, Petitioner was sentenced to a term of not less than ten nor more than twenty years on count one, a consecutive term of not less than ten nor more than twenty years on count two, and a consecutive term of two years on count four. (Doc. No. 19-3).

## B. Direct Appeal to the West Virginia Supreme Court of Appeals

Petitioner, by counsel, appealed his conviction and sentence to the West Virginia Supreme Court of Appeals on June 1, 2004. (Doc. No. 19-4). As grounds for relief, Petitioner claimed the following assignments of error:

1. The Court erred when it permitted the prosecution to introduce statements made by Wesley May pursuant to police questioning while being seized pursuant to the enforcement of the March 21, 2001, search warrant.

2. The trial court abused its discretion when it introduced other crimes evidence pursuant to Rule 404(b).

By an order entered on September 9, 2004, the Court denied the appeal. (Id.).

## C. Motion for Reconsideration of Sentence

On January 12, 2005, Petitioner, by counsel, filed a motion for reconsideration of sentence with the Circuit Court of Berkeley County. (Doc. No. 19-5). By an order entered January 6, 2006, the Court denied Petitioner's motion. (Id.).[1]

---

[1] Petitioner's one-year ADEPA clock stopped running while this motion was pending. See Wall v. Kholi, 131 S.Ct. 1278, 1288 (2011).

**D. State Habeas Corpus**

On January 5, 2006, Petitioner, proceeding pro se, filed a petition for state habeas relief pursuant to W. Va. Code § 53-4A-1 in the Circuit Court of Berkley County. (Doc. No. 19-6). Petitioner asserted the following grounds for relief:

1. Petitioner was denied his right to a fair and unbiased jury as guaranteed by the sixth and fourteenth amendments to the Constitution of the U.S.A., and Article III, §§ 10 and 14 of the West Virginia Constitution when he was prosecuted for sexual abuse by a parent, a violation of W.Va. Code § 61-8D-5 (1998) and distribution and exhibiting of material depicting minors engaged in sexually explicit conduct, a violation of W.Va. Code §61-8C-3 (1988, C. 42).

2. Petitioner was denied his constitutional right to the meaningful and effective assistance of counsel as guaranteed by the first, sixth and fourteenth amendments to the Constitution of the U.S.A. and Article III, § 14 of the West Virginia Constitution.

   a. Keith Wheaton, defense counsel, failed to challenge the multiple carbon-copy counts for violating W.Va. Code § 61-8D-5 as contained in the indictment returned by the grand jury of Berkeley County, as a violation of the constitutional prohibition against double jeopardy, Fifth Amendment, Constitution of the U.S.A.; Article III, § 5.

   b. Keith Wheaton, Defense counsel, failed to challenge the process by which prospective members of the grand jury and petit jury were selected by the Circuit Court Clerk of Berkeley County.

   c. Keith Wheaton, Defense counsel, failed to reveal to petitioner, that there existed a possible conflict of interest due to thirty-one allegations of misconduct levied against Mr. Wheaton by his clients. See Lawyer Disciplinary Board v. Wheaton, 2004 WV LEXIS 146 (2004).

   d. Prior to trial, the prosecutor made a plea offer to petitioner's defense attorney Keith Wheaton, that petitioner plead guilty to sexual abuse of a minor by a parent and serve a sentence of 10-20 years. In exchange the prosecutor would dismiss the remaining charges. Mr. Wheaton failed to communicate the prosecution's plea offer to petitioner prior to expiration of the offer.

   e. S. Andrew Arnold, Appellate counsel, failed to challenge the multiple, undifferentiated, carbon copy counts for violating W.Va. Code § 61-8D-5 as

3

contained in the indictment returned by the Grand Jury of Berkeley County, as a violation of the constitutional prohibition against double jeopardy, Fifth Amendment, Constitution of the U.S.A.; Article III, § 5, Constitution of West Virginia.

    f.  S. Andrew Arnold, Appellate counsel, failed to challenge the process by which prospective members of the jury and petit jury was selected by the Circuit Court Clerk of Berkeley County.

    g.  John P. Adams, post-conviction counsel, failed to file a verified petition for post-conviction relief within one year of the denial of petitioner's direct appeal thereby foreclosing the possibility of relief in the U.S. District Court.

3. Petitioner's constitutional right to due process of law was denied when sentence was imposed subsequent to an indictment by the Grand Jury of Berkeley County, WV which did not specify a specific date or distinguish between conduct on any given date.

(Doc. No. 19-6).

By Order entered March 2, 2006, the state habeas court accepted Petitioner's petition, appointed counsel, and ordered habeas counsel to file an amended petition. (Doc. No. 19-12). On March 27, 2008, Petitioner, by habeas counsel, Christopher Prezioso, filed an amended petition for post-conviction relief alleging the following grounds for relief:

1. Wesley A. May Received Ineffective Assistance of Counsel in Violation of the Sixth Amendment to the United States Constitution and Article III of the West Virginia Constitution:

    a.  Failure to sever counts in the indictment;

    b.  Failure to assert a mental defense/diminished capacity;

    c.  Failure to properly argue suppression issues;

    d.  Failure to hire appropriate computer expert;

    e.  Failure to request Grant Jury minutes or Grant Jury transcripts;

    f.  Failure to request that State's primary witness be given an independent psychological evaluation;

g. Trial counsel did not properly relay the state's plea letter;

h. Trial counsel's performance at trial;

i. Trial counsel never gave Wesley M. May a copy of the presentence investigation report prior to sentencing;

j. Appellate counsel's failure to provide an adequate appeal;

k. Counsel previously appointed to represent Wesley M. May in filing a habeas corpus petition failed to timely file a petition for Habeas Corpus relief;

2. Wesley M. May's Due Process Rights Were Violated Because Wesley M. May Was Not Competent to Stand Trial.

3. Wesley M. May's Due Process Rights Were Violated Because Certain Evidence Presented at Trial Should Have Been Excluded and Suppressed;

a. Suppression of statements made by Wesley May on March 21, 2001;

b. Statement not given freely and voluntarily;

c. Acts introduced to show lustful dispositions;

4. Wesley M. May Received a Sentence That Was in Violation of the Eighth Amendment to the United States Constitution and Article III of the West Virginia Constitution;

5. Wesley M. May's Due Process Rights Were Violated by the Prosecutors Prejudicial Statements and Improper Communications Between Prosecutor and Jury;

6. Wesley M. May's Due Process Rights Were Violated by Allowing the Child Witness to Testify Without Any Proper Psychiatric Determination of Said Child's Competency;

7. Wesley M. May's Due Process Rights Were Violated Because Prosecutors Withheld Exculpatory Evidence Prior to Trial in this Matter;

8. Wesley M. May's Due Process Rights Were Violated Because that Jury Selection Was Improper;

9. Wesley M. May's Due Process Rights Were Violated Because the Defendant Was Not Represented by Counsel at the Preliminary Hearing;

10. Wesley M. May's Due Process Rights Were Violated Because the State's Primary Witness Gave him False And/or Unreliable Testimony at Trial;

11. Wesley M. May's Due Process Rights Were Violated by State Improperly Building a Criminal Case Against Wesley M. May Through the Guise of Civil Abuse and Neglect Proceeding;

   a. All evidence used against Wesley M. May should have been excluded pursuant to the Fruit of the Poisonous Tree Doctrine;

   b. Improper commingling of Abuse and Neglect Evidence and Criminal Evidence;

12. Wesley M. May's Due Process Rights For Violated Because the True Bill of Indictment Returned by the Berkeley County Grand Jury Did Not Specify a Specific Date or Distinguish Between Conduct on Any Given Date;

13. Wesley M. May's Due Process Rights Were Violated Because the Prosecuting Attorney Failed to Fulfill His Duty as an Officer of the Court

14. Wesley M. May Should Receive Habeas Corpus Relief.

(Doc. No. 19-7).

On April 17, 2009, that Petitioner, by counsel, filed a second amended petition for post-conviction relief with the state habeas court alleging the following grounds for relief:

1. Wesley M. May Received Ineffective Assistance of from trial and appellate Counsel in Violation of the Sixth Amendment to the United States Constitution and Article III of the West Virginia Constitution:

   a. Failure to sever counts in the indictment;

   b. Failure to assert a mental defense/diminished capacity;

   c. Failure to properly argue suppression issues;

   d. Failure to hire appropriate computer expert;

   e. Failure to request Grand Jury minutes or Grand Jury transcripts;

   f. Failure to request that State's primary witness be given an independent psychological evaluation;

g.  Trial counsel did not properly relay the state's plea letter;

h.  Trial counsel's performance at trial;

i.  Trial counsel never gave Wesley M. May a copy of the pre-sentence investigation report prior to sentencing;

j.  Appellate counsel's failure to provide an adequate appeal;

k.  Counsel previously appointed to represent Wesley M. May in filing a habeas corpus petition failed to timely file a petition for Habeas Corpus relief;

2.  Wesley M. May's Due Process Rights Were Violated Because Wesley M. May Was Not Competent to Stand Trial;

3.  Wesley M. May's Due Process Rights Were Violated Because Certain Evidence Presented at Trial Should Have Been Excluded and Suppressed:

a.  Suppression of statements made by Wesley May on March 21, 2001;

b.  Statement not given freely and voluntarily;

c.  Acts introduced to show lustful disposition;

4.  Wesley M. May Received a Sentence That Was in Violation of the Eighth Amendment to the United States Constitution and Article III of the West Virginia Constitution;

5.  Wesley M. May's Due Process Rights Were Violated by the Prosecutors Prejudicial Statements and Improper Communications Between Prosecutor and Jury;

6.  Wesley M. May's Due Process Rights Were Violated by Allowing the Child Witness to Testify Without Any Proper Psychiatric Determination of Said Child's Competency;

7.  Wesley M. May's Due Process Rights Were Violated Because Prosecutors Withheld Relevant Evidence Prior to Trial in this Matter;

8.  Wesley And May's Due Process Rights Were Violated Because the Jury Selection Was Improper;

9.  Wesley M. May's Due Process Rights Were Violated Because the Defendant Was Not Represented by Counsel at the Preliminary Hearing;

10. Wesley M. May's Due Process Rights Were Violated because the State's Primary Witness Gave False And/or Unreliable Testimony at Trial;

11. Wesley M. May's Due Process Rights Were Violated by State Improperly Building a Criminal Case Against Wesley M. May Through the Guise of Civil Abuse and Neglect Proceedings:

   a. All Evidence Used Against Wesley M. May Should Have Been Excluded Pursuant to the Fruit of the Poisonous Tree Doctrine;

   b. Improper Commingling of Abuse and Neglect Evidence and Criminal Evidence;

12. Wesley M. May's Due Process Rights Were Violated Because the True Bill of Indictment Returned by the Berkeley County Grand Jury Did Not Specify a Specific Date or Distinguish Between Conduct on Any Given Date;

13. Wesley M. May's Due Process Rights Were Violated Because the Prosecuting Attorney Failed to Fulfill His Duty As An Officer of the Court.

(Doc. No. 19-8).

The petitioner also included a <u>Losh</u> list without any of the potential grounds checked off. Syl. Pt. 3 <u>Losh v. McKenzie</u>, 277 S.E.2d 606 (W.Va. 1981) ( petitioner may waive grounds knowing and intelligently by failing to check them off on a checklist). Counsel for the Respondent filed a return and motion to dismiss Petitioner's amended petition. (Doc. No. 19-13). By a final order entered on September 15, 2010, the Court denied relief. (Doc. No. 19-9. Although, an omnibus hearing was not conducted, the judge made specific findings of fact with reference to the trial proceedings and citation to State law, where applicable.

On January 26, 2011, Petitioner, by counsel, appealed to the West Virginia Supreme Court of Appeals claiming the following grounds for relief:

1. The Circuit Court Committed Reversible Error by Denying Appellants Petition for Habeas Corpus Without Evidentiary Hearing Because There Was Probable Cause to Believe That Appellant Was Entitled to at Least Some of the Relief Requested in Said Petition;

2. Wesley M. May's Due Process Rights Were Violated Because Wesley M. May Received Ineffective Systems of Counsel in Violation of the Sixth Amendment to the United States Constitution and Article III of the West Virginia Constitution;[2]

3. Appellant Wesley M. May's Due Process Rights Were Violated Because Wesley M. May Was Not Competent to Stand Trial;

4. Wesley M. May's due process Rights Were Violated Because Certain Evidence Presented at Trial Should Have Been Excluded and Suppressed;

    a. Suppression of Statement Made by Appellant Wesley May on March 21, 2001;

    b. Acts Introduced to Show Lustful Disposition;

5. Appellant Wesley M. May Received a Sentence That Was in Violation of the 8 Amendment to the United States Constitution and Article III of the West Who the Virginia Constitution;

6. Appellant Wesley M. May's Due Process Rights Were Violated by the State's Prejudicial Statements and Improper Communications Between Prosecutor and Jury;

7. Appellant Wesley M. Way's Due Process Rights Were Violated by Allowing the Child Witness to Testify Without Any Proper Psychiatric Determination of Said Child's Competency;

8. Wesley M. May's Due Process Rights Were Violated Because the State Withheld Relevant Evidence Prior to the Trial of this Matter;

9. Appellant Wesley M. May's Due Process Rights Were Violated Because the Jury Selection Was Improper;

10. Appellant Wesley M. May's Due Process Rights Were Violated Because the State's Primary Witness Gave False and/or Unreliable Testimony at Trial;

11. Appellant Wesley M. May's Due Process Rights Were Violated by the State Improperly Building a Criminal Case Against Wesley M. May Through the Guise of Civil Abuse and Neglect Proceeding;

12. Improper Comingling of Abuse and Neglect Evidence and Criminal Evidence;

---

[2] The subparts to this claim are identical to those raised in his state petition.

13. Appellant Wesley M. May's Due Process Rights Were Violated Because the True Bill of Indictment Returned by the Berkeley County Grand Jury Did Not Specify a Specific Date or Distinguish Between Conduct on Any Given Date;

14. Appellant Wesley M. May's Due Process Rights Were Violated Because the Prosecuting Attorney Failed to Fulfill His Duty as an Officer of the Court.

(Doc. No. 19-10). The Court denied the appeal on May 16, 2011. (Doc. No. 19-11).

**E. Federal Habeas Corpus**

On June 10, 2011, Petitioner filed a petition for federal habeas relief under 28 U.S.C.

§ 2254, making the following claims:

1. Petitioner was deprived of the effective assistance of counsel:

    a. Counsel failed to seek severance of the counts alleging sexual abuse by a parent, a crime classified as child abuse, from the count alleging violation of 61-8C-3;

    b. Counsel failed to investigate and present a mental defense or a diminished capacity defense;

    c. Counsel Wheaton failed to properly argue issues of suppression concerning four evidentiary items:

        i.    Petitioner's uncounseled statement of March 21, 2001;
        ii.   The stories and diary entries attributed to defendant;
        iii.  Other incidents of sexual abuse; and
        iv.   The alleged photographs of child pornography

    d. Counsel Wheaton did not properly hire or disclose the computer expert he hired as a defense expert;

    e. Counsel Wheaton failed to request that the State's primary witness be given an independent psychological evaluation;

    f. Counsel Wheaton failed to request the Grand Jury Minutes or Grand Jury Transcripts;

    g. Counsel Wheaton did not relay the state's plea offer in a timely and appropriate manner;

h. Counsel Wheaton failed to fulfill his obligation to serve as his client's advocate at crucial junctures of the case:

      i. Counsel failed to strike biased and questionable jurors;
      ii. Counsel failed to present the proper evidence at trial;
      iii. Counsel failed to properly interview the witness he mentioned in his opening statements

i. Counsel Wheaton did not review the pre-sentence investigation report prepared by the County Probation Officer prior to petitioner's sentencing;

2. Appellate counsel failed to include more viable appellate issues in petitioner's direct appeal;

3. Petitioner was denied his right to an appropriate sentence as guaranteed by the Eighth Amendment to the Constitution;

4. Petitioner was denied his constitutional right to a fair and impartial jury as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the U.S.A., because the jury selection process was flawed;

5. Petitioner's constitutional right to due process of law is guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the U.S.A. Was violated when the Court admitted inauthentic evidence that should have been excluded and suppressed;

6. Petitioner's constitutional right to due process of law as secured by the Fifth and Fourteenth amendments to the Constitution of the U. S. A. was violated by the prosecutor's prejudicial and improper communication with the petit jury;

7. Petitioner's constitutional rights to notice of the charges levied at him and due process of law as secured by the Fifth and Sixth and Fourteenth Amendments to the Constitution of United States of America were violated when the true bill of indictment returned by the grand jury of Berkeley County failed to specify a specific date or distinguish between sexual conduct on any given date;

8. Petitioner's constitutional right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the U.S.A. was violated when the prosecutor's withheld relevant evidence prior to trial;

9. Petition was denied his constitutional right to effective assistance of counsel as guaranteed by the Sixth Amendment to the Constitution of West Virginia [sic] when petitioner was not represented by counsel at the preliminary hearing in this case;

10. Petition was denied his right to a fair and impartial jury as secured by the Fifth, Sixth and Fourteenth amendments to the Constitution of the U.S.A... when the sole state witnesses to the crime gave unauthentic testimony; and

11. Petitioner was denied his right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of U.S.A. when petitioner was incompetent to stand trial

On September 13, 2011, the petitioner added three additional claims to his federal petition:

12. Petitioner's right to due process of law as secured by the Fifth and Fourteenth Amendments and his right to a fair jury as secured by the Sixth amendment to the Constitution of the U.S.A. was violated when the alleged victim was allowed to testify without any proper psychiatric determination of witness's competency;

13. Petitioner was denied his right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the U.S.A. when law enforcement improperly built a criminal case against petitioner through the guise of a civil abuse and neglect proceeding;

14. Petitioner's constitutional right to due process of law as secured by the Fifth and Fourteenth Amendments to the Constitution of the U.S.A. was violated when the prosecuting attorney for Berkeley County, West Virginia failed to fulfill his duties as an officer of the court.

Respondent filed an answer to the petition, along with a motion for summary judgment, on October 13, 2011. (Doc. No. 17; Doc. No. 19). Petitioner filed a reply on January 6, 2012. (Doc. No. 37).

On June 7, 2012, Petitioner filed a motion to amend and supplement his petition for federal habeas corpus relief, putting forth the following grounds for relief:

1. Petitioner was provided ineffective assistance when his defense counsel, Keith Wheaton failed to seek the dismissal of count four of the indictment as unconstitutional and a violation of Petitioner's right to a unanimous verdict;

2. Petitioner was provided ineffective assistance when his appellate counsel, Andrew Arnold, failed to seek the dismissal of count four of the indictment as unconstitutional and a violation of Petitioner's right to a unanimous verdict;

3. Petitioner was denied his right to an appropriate sentence because the Court imposed a two-year sentence for violating W. Va. Code § 61-8C-3 when there was no proof that he had filmed a minor engaged in sexually explicit conduct;

4. Petitioner was denied his right to an appropriate sentence because the Court imposed a two-year sentence for violating W. Va. Code § 61-8-C-3 when the statutory framework in place at the time of Petitioner's trial mandated prosecution of his conduct under W. Va. Code § 61-8-28.

(Doc. No. 38). Respondent filed an objection to the motion on June 12, 2012. (Doc. No. 39).

<u>**Applicable Rules of Law**</u>

Based upon a review of the record, the undersigned recommends that Respondent's motion for summary judgment be **<u>GRANTED</u>** and that Petitioner's pending motion to amend should be **<u>DENIED</u>** as futile.

I. **<u>Standard of Review for Summary Judgment</u>**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. liberty lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine

issues of fact.  Celotex at 323.  Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party must present specific facts showing the existence of a genuine issue for trial.  Id.  This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial."  Anderson at 256.  The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment.  Id. at 248.    To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]."  Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson at 248.  Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587.

## II.    Federal Habeas Review Under 28 U.S.C. § 2254

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.  § 2254(a).

"Federal habeas relief does not lie for errors of state law." Thomas v. Taylor, 170 Fed 3rd 466, 470 (4th Cir. 199); see also, Weeks v. Angelone, 176 F.3d 249, 262 (4th Cir. 1999). Furthermore, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that… the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).

The "exhaustion" doctrine requires a federal habeas petitioner to have presented all federal claims – *in federal terms*- to the highest state court prior to presenting them for federal habeas review. Picard v. Connor, 404 U.S. 270, 275 (1971) (citations omitted). This requirement ensures the State is given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Id. To exhaust a claim in state court, the petitioner must "expressly raise that same federal constitutional claim in state court that he raises in federal court." Diaz v. Weisner, 2006 U.S. Dist. LEXUS 56583, at *31 (W.D.N.C. Aug. 1, 2006). "It is not enough that all the facts necessary to support the federal claim are before the state court or that a somewhat similar state-claim was made." Anderson v. Harless, 459 U.S. 5, 6 (1982) (citations omitted).

Even if a prisoner is found to have exhausted his state remedies, the federal court may not grant habeas relief for claims adjudicated on the merits by the state court unless a state court's adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States;

or

(2) resulted in his decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding...

28 U.S.C. § 2254(d) (1) and (2); see also Williams v. Taylor, 539 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000), (quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000). However, the court must still "confine [its] inquiry to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.'"Id. at 158.

A federal habeas court may grant relief under the open quote contrary to" clause if the state court arrived at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has I said I materially indistinguishable facts." Williams, 529 U.S. at 413. A federal court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the court's decision but unreasonably implies that principle to the facts of the prisoner's case." Id. "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.

When the petitioner challenges a factual determination made by a state court, "Federal habeas relief is only available if the state court's decision to deny a post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S.C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual

issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" <u>Tucker v. Ozmint</u>, 350 F.3d 433, 439 (4th Cir. 2003). Habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993); <u>Richmond v. Polk</u>, 375 F.3d 309 (4th Cir. 2004). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice." <u>Brecht</u>, 507 U.S. at 637.

### III. <u>Analysis of Respondent's Motion for Summary Judgment</u>

**1. <u>Ineffective Assistance of Counsel Claims</u>**

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." <u>Id</u>. Second, "the defendant must show that the deficient performance prejudiced the defense." <u>Id</u>.

To satisfy the deficient performance requirement, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed... by the Sixth Amendment." <u>Id</u>. A reviewing court should not grade trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." <u>Carter v. Lee</u>, 283 F.3d 240, 249 (4th Cir. 2002). Additionally, a reviewing court should not second-guess counsel's performance and must

instead "evaluate counsel's performance 'from counsel's perspective at the time.'" <u>Hunt v. Lee</u>, 291 F.3d 284, 289 (4th Cir. 2002).

To satisfy the prejudice requirement, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. <u>See Id</u>. at 691. Furthermore, the Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." <u>Fields v. Att'y Gen. of Md.</u>, 956 F.2d 1290, 1297 (4th Cir. 1992).

The Fourth Circuit has set forth two categories of decisions made by trial counsel when analyzing ineffective assistance of counsel claims. First, there are personal decisions that require the defendant's consent, such as the decision to enter a guilty plea, the decision to waive a trial by jury, the decision to appeal, and the decision of whether to testify at trial. <u>Sexton v. French</u>, 163 F.3d 874, 885 (4th Cir. 1998) (citations omitted). The second category includes decisions that "'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." <u>Id</u>. (quoting <u>United States v. Teague</u>, 953 F.2d 1525, 1531 (11th Cir. 1992)). Accordingly, "[t]here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." <u>Harrington v. Richter</u>, 131 S. Ct. 770, 790 (2011) (citations omitted) (internal quotation marks omitted).

    **a. Counsel failed to seek severance of counts one through three from counts four and five**

Petitioner claims that Counsel provided ineffective assistance by failing to move the trial court to sever counts one through three (sexual abuse by a parent, guardian, custodian, or person in position of trust to a child), from count four (distributing and exhibiting material depicting minors engaged in a sexually obscene matter and count five (distribution and display to a minor of obscene matter). As noted by the habeas court, "Petitioner's argument is based on the theory that the jury was adversely affected by the evidence pertaining to [his] collection of child pornography." (Doc. No. 19-9, p. 9). However, the habeas court properly concluded that counsel's performance was not deficient in this area because legal precedence was not on his side.

In Syllabus point 2 of <u>State v. Milburn</u>, 511 S.E. 2d 828, 830 (W.Va. 1998), the West Virginia Supreme Court held that:

> A defendant is not entitled to relief from prejudicial joinder pursuant to Rule 14 of the West Virginia Rules of Criminal Procedures [sic] when evidence of each of the crimes charged would be admissible in a separate trial for each other.

"Collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally...provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment." Syl. Pt. 2. <u>State v. Edward Charles L.,</u> 183 W.Va. 641 (1990). Based on this rule, even if Counsel had filed a motion for severance, the pornographic images from counts four and five would still have been admissible in the trial for counts one through three. Since the evidence concerning Petitioner's ownership of child pornography would have been admissible even if the counts were severed,

and as a matter of law Petitioner was not entitled to severance,[3] Counsel's decision not to file a motion for severance therefore had no impact on the outcome of Petitioner's trial, and Petitioner's argument is without merit. [4]

### b. Counsel Failed to Investigate or Present any Defense Related to Petitioner's Mental State or Mental Capacity

"The Due Process Clause of the Fourteenth Amendment prohibits states from trying and convicting mentally incompetent defendants." Walton v. Angelone, 321 F.3d 442, 459 (4th Cir. 2003), citing Pate v. Robinson, 383 U.S. 375, 384-86 (1966)). Competency determinations focus solely upon a defendant's present ability to stand trial. "The test for determining competency is whether a defendant 'has sufficient **present** ability to consult with his lawyer with a reasonable degree of rational understanding…and whether he has a rational as well as factual understanding of the proceedings against him" Dusky v. United States, 363 U.S. 402 (1960)(*per curiam* (emphasis added).

Petitioner claims that Counsel provided ineffective assistance by failing to investigate or present any defense related to his mental state or mental capacity. Without question, defense counsel has an affirmative obligation to conduct an investigation into a defendant's background, including his mental health history. See Williams v. Taylor, 529 U.S. 362, 396 (2000); See also Strickland at 691. However, this obligation is limited by the contours of reason. Strickland at 691. ("In other words counsel has a duty to make reasonable investigations or to

---

[3] "Even where joinder or consolidation of offenses is proper under the West Virginia Rules of Criminal Procedure, the trial court may order separate trials pursuant to Rule 14(a) on the ground that such joinder or consolidation is prejudicial.  The decision to grant a motion for severance pursuant to W.Va. R. Crim. P. 14(a) is a matter within the **sound discretion of the trial court**. Syl. Pt. 3, State v. Hatfield, 80 S.E.2d 670, 671 (W.Va. 1988) (emphasis added).

[4] In fact, Petitioner was acquitted of one count of sexual abuse and one count of displaying sexually explicit material to a minor.  Therefore, it would stand to reason that he was not prejudiced by his counsel's decision not to move to sever.

make a reasonable decision that makes particular investigations unnecessary."). A pre-existing diagnosis of mental illness may be relevant to the issue of Petitioner's competency at the time of the incident and his competency to stand trial, but the diagnosis does not mandate a competency hearing. Anderson v. Hickman, 2004 WL 883403, 883412 (9th Cir. 2004). Moreover, in Gluzman v. United States , 124 F.Supp.2d 171, 175-76 (S.D.N.Y. 2000), the United States District Court, faced with a "documentary history of severe mental illness: ruled that it was not enough to create a reasonable doubt on the part of the trial court or defense counsel sufficient to request a competency evaluation.

In the instant matter, Petitioner does not set forth any facts which would give rise to a *bona fide* doubt regarding his competency at either the time of trial or when he committed the offenses charged. Petitioner does not allege, nor does the record demonstrate, that he was actually incompetent to stand trial. See Pate v. Robinson, 383 U.S. 375 (1966); see also Walton v. Angelone, 321 F.d 442, 459 (4th Cir. 2003) (discussing differences between procedural and substantive due process competency claims). In his habeas appeal to the West Virginia Supreme Court, Petitioner alleged only that his pre-trial statement to the investigating officer demonstrated his obvious mental incapacity.[5] However, he attended both pre-trial hearings, and the state habeas court noted that he was "engaged...and in fact had an extensive discussion with the judge during the September 25 pre-trial hearing concerning the state's plea offer." (Doc. No. 19-9, p. 11). In addition, Petitioner testified in his own defense, and the state

---

[5] Specifically, the following statements made during the interview: he was sexually abused by different people during his childhood; he was reliant on the over the counter cold medicine at the time of the alleged incident that induced sleep; he indicated that he was not sure if  he had sex with his daughter; he indicated that he could not remember touching his daughter's breast but was sure that it  happened; he was extremely depressed; he suffered from erectile dysfunctions; and his abuse and neglect counselor recommended that he go to a psychologist to get an improvement period. (Doc. No. 19-10, p. 15).

habeas court noted that the testimony was "lucid" and demonstrated Petitioner's "ability to recall the events relevant to the trial." Id.

Furthermore, nothing in the record indicates that Petitioner has ever suffered from a mental disease or defect.  Petitioner does claim that he was under the influence of Nyquil when he gave his statement to police, that he had been sexually abused as a child, and that he could not recall whether he had sex with his daughter. However, none of these claims suggest that he was incompetent to stand trial, or that he lacked the capacity to understand his conduct.

### c.  Counsel Failed to Properly Argue Issues of Suppression for Four Evidentiary Items

Petitioner next claims that Counsel provided ineffective assistance by failing to properly argue issues of suppression regarding four evidentiary items.

The first evidentiary item is a series of statements made by Petitioner to an investigating officer on May 21, 2001. Petitioner argues that Counsel provided ineffective assistance by failing to file a motion to suppress. Although defense counsel did not file a formal, written motion to suppress this statement, the court had a mandatory duty to address the statement's voluntariness.  See Syl. Pt. 1, State v. Fortner, 148 S.EE.2nd 669 (W.Va. 1996) *overruled on other grounds by* State ex. Rel. White v.Mohn, 283 S.E.2d 9a4 (W.Va. 1981).  The investigating officer, West Virginia State Trooper Sergeant testified that he took a written statement from Petitioner while sitting in his kitchen. (Doc. No. 19-17, pp. 89-90). Prior to asking him any questions, Trooper Burnette advised Petitioner of his Miranda rights. Petitioner waived his rights in writing.  Petitioner then voluntarily agreed to speak to Trooper Burnette. (Doc. No. 19-17, p. 89).

The statement took the form of a question and answer session between the Trooper and Petitioner. Petitioner acknowledged that he understood his rights and that he was not under arrest. Id. He told the trooper that he had fondled his daughter's breasts and had touched them with his hands and mouth. Id. at 90-91. He stated that he burned pornography in the fire place as part of his therapy. Id. at 92. He admitted to having pornographic images stored on his computer, but no pornographic depictions of children. Id. at 93. He admitted to having "wet dreams" while the victim slept with him. Petitioner claimed to suffer from erectile dysfunction and wrote pornographic stories on his computer about his fantasy girl as a way of treating his condition. Id. When asked by Trooper Burnette whether he agreed or denied the allegations, he stated, "I will not deny it and I will not agree." Id. at 94.

During cross-examination of Trooper Burnette, defense counsel attempted to portray Petitioner's statement as an involuntary attempt to strengthen his position during the civil abuse and neglect proceeding. Id. at 96-97. Counsel established that there was a second statement which trooper Burnette did not write down. Id. at 97-99.

After hearing the Trooper's testimony, the trial court determined that, although there was no motion to suppress, the court would consider the admissibility of the statements *sua sponte*. Id. at 111. The court found this statement noncustodial. Despite this, the court noted that the Trooper Mirandized Petitioner. The court did express reservations as to whether the statement was, in fact, a confession, but considered that a question of fact for the jury. The court made a threshold finding that Petitioner's statement was voluntary. If the jury upon proper instruction found the statement involuntary they could disregard it. Id. at 111.

There is no evidence that the trial court's determination was contrary to, or an unreasonable application of federal law. In West Virginia, the courts use the "objective test" to determine whether a defendant was in custody when he or she gave a statement. See State v. McCracken, 624 S.E.2d 537, 542 (W.Va. 2005), *citing* Oregon v. Mathiason, 429 U.S. 492, 495 (1977). Petitioner was in his own home, sitting at his kitchen table, and did not speak until he had been Mirandized. The court noted there was no evidence of threats, coercion, or statements made by the officers to foment a false sense of hope. (Doc. No. 19-17, p. 112). Because the transcript for the pre-trial hearing on September 3, 2010 clearly shows that the issue of the statements admissibility was thoroughly considered by the Court, Petitioner cannot establish that he was prejudiced by his counsel's failure to move to suppress this statement.

The second evidentiary item is a collection of stories and diary entries attributed to the defendant. Petitioner argues that Counsel provided ineffective assistance by failing to file a motion to suppress. This claim, however, is without merit because Petitioner has not shown that Counsel's failure to file the motion prejudiced his defense. The transcript for the pre-trial hearing on September 3, 2010 shows that the issue of suppressing the collection was addressed before the Court, with Counsel strongly advocating against the admissibility of the evidence but the Court ultimately reaching the opposite conclusion. (Doc. No. 19-17, pp. 107-111). Petitioner has submitted no evidence that the Court would have come to a different conclusion if it had been presented with a motion to suppress.

The third evidentiary item is "other incidents of sexual abuse." Petitioner claims that Counsel provided ineffective assistance by failing to argue for the suppression of this evidence. Petitioner provides no more information than the phrase "other incidents of sexual abuse", and

there is no way to determine to what specific evidence he is referring. This claim is insufficiently pled, unable to be judged on its merits, and therefore should be dismissed.

The fourth evidentiary item is a collection of pornographic pictures found on Petitioner's computer. Petitioner claims that Counsel provided ineffective assistance by failing to argue for the suppression of the pictures. This claim has no merit because Petitioner has not shown that Counsel's inaction prejudiced his defense. These photos were undeniably related to the case against Petitioner, most notably count four, and there is simply no reason to believe that the trial court would have agreed to suppress the pictures. Any argument by Counsel would have been ultimately futile.

### d. Counsel Did Not Properly Hire or Disclose the Computer Expert for the Defense

Petitioner next argues that Counsel provided ineffective assistance by failing to properly hire or disclose the computer expert for the defense, Jeffery Wogan. Plaintiff is specifically referring to the fact that Counsel did not reveal his intent to call Mr. Wogan until the September 3, 2003 pre-trial hearing and did not provide a report or CV. This claim is without merit because Petitioner has not shown that Counsel's actions prejudiced his defense.

At trial, Counsel was able to question Mr. Wogan with almost no interference. (Doc. No. 19-24, pp. 38-51). In fact, the State only objected one time, prior to the Court's certification of Mr. Wogan as a witness. Counsel's earlier errors obviously had no impact on the ability of Mr. Wogan to function as a defense witness or on the ultimate outcome of Petitioner's case.

### e. Counsel Failed to Request that Victim be Given Psychological Evaluation Prior to Testimony

Petitioner next argues that Counsel provided ineffective assistance by failing to request that the victim be given an independent psychological evaluation prior to her testimony. This

claim is without merit because Petitioner has not shown that Counsel's decision to not request that the victim be given an independent psychological evaluation prior to her testimony was objectively unreasonable.

Under West Virginia law, a defendant requesting an additional psychological exam of the victim must present the trial court with evidence that there is a compelling need or reason. Syl. pt. 3, State v. Delaney, 417 S.E.2d 903, 904 (W. Va. 1992). The court must then balance this need against the intrusiveness of the exam, the victim's age, the physical or psychological effects of the exam, the probative value of the exam, the presence of alternative evidence on the same issue, and the remoteness of time between the incident and the exam. Id.

Here, the record does not contain any facts that would have led Counsel to believe that the Court would grant an independent psychological evaluation of the victim. There was no evidence that the victim suffered from diminished capacity or any mental defect that would make her unable to act as a witness. Additionally, the victim testified at the September 3, 2003 pre-trial hearing, where she appeared cogent and lucid.

**f.    Counsel Failed to Request Grand Jury Minutes or Grand Jury Transcripts**

In 2001, it appears that the Berkeley Grand Jury  returned an indictment (01-F-117against Petitioner for the same charges set forth in the October 2002 Grand Jury Indictment (02-F1-131) for which he was ultimately convicted.   Petitioner's previous public defender filed a Motion to Dismiss the 2001 indictment, which was granted.  In his state habeas proceeding[6], Petitioner suggested that there were most likely discrepancies between the evidence given to the 2001 Grand Jury and the 2002 Grand Jury which would only be learned by reproducing the

---

[6] In his federal petition for habeas petition, Petitioner simply stated that counsel was ineffective for failing to request grand jury minutes or grand jury transcripts without any other detail.

testimony and evidence presented to each Grand Jury. Petitioner argued that his trial counsel failed to obtain important information that most likely would have led to the 2002 indictment being dismissed. In addition, petitioner argued that that because he was not afforded the opportunity to compare the evidence presented to the 2001 Grand Jury with the evidence presented to the 2002 Grand Jury, he was denied several arguments that could have been raised prior to trial. (Doc. No. 19-8, pp. 13-14).

Grand Jury Minutes or Grand Jury Transcripts *may* be turned over to the defendant under limited circumstances. See W. Va. R. Crim. P. 6(e) (2). One such circumstance is when the defendant presents grounds to dismiss the indictment based upon matters occurring before the Grand Jury. Furthermore, Grand Jury Minutes or Grand Jury Transcripts *must* be turned over to the defendant when a witness testifying at trial has previously testified before the Grand Jury. See W. Va. R. Crim. P. 26.2.

Here, no witness that testified before either Grand Jury testified during the trial. Additionally, Petitioner has presented no evidence that there were grounds to dismiss the indictment based upon matters occurring before the 2002 Grand Jury. Accordingly, Petitioner cannot meet either basis for seeking release of the Grand Jury minutes or testimony.

g. **Counsel Did Not Relay the State's Plea Offer in a Timely Manner**

Petitioner next claims that Counsel provided ineffective assistance by failing to timely relay a plea offer made by the State. Specifically, Petitioner contends that Counsel received a plea offer from the State on August 11, 2003. This plea offer gave Petitioner the option of pleading guilty to all counts of the indictment in exchange for a recommendation of concurrent not less than ten nor more than twenty year sentences. According to Petitioner, he was not told

of the plea offer until after the deadline for acceptance had passed on August 21, 2003.  This

claim is without merit because Petitioner has not shown that Counsel's actions prejudiced his

defense.

The state repeated the terms of the August 11, 2003 plea offer during the September

25, 2003 pre-trial hearing. At that time, Petitioner declined the offer. (Doc. No. 19-18, pp. 29-

34). This unequivocally shows the State did not withdraw its offer when Petitioner did not

respond to it be August 21, 2003, and that Petitioner considered and rejected the State's offer

on September 25, 2003 prior to trial.[7]

### h.   Counsel Failed to fulfill his obligation to serve as his client's advocate at three crucial junctures of his case

Petitioner first claims that Counsel provided ineffective assistance by failing to strike

three biased jurors, Mr. Womble,[8] Mr. Keif,[9] and Mr. Cook[10]. This claim is without merit

because Petitioner has failed to show that Counsel's action prejudiced his defense.

With respect to Mr. Womble and Mr. Keif, neither of the two men ultimately served on

the petit jury. There were merely on the panel of prospective jurors.  Because the two men

were not on the petit jury, there is simply no basis to claim they should have been stricken.

Moreover, even if these two jurors were subject to removal for cause, the Supreme Court has

---

[7] It also appears that although the letter offering the plea agreement was written on August 11, 2003, with an expiration of noon August 21, 2003, it was not received  by defense counsel, Keith Wheaton, until August 21, 2003, and was given to Petitioner at 2:30 p.m. that same date. (Doc. No. 37-3, p. 1).

[8] Michael Womble served as a Martinsburg police officer from 1993 to 1999, and a Berkeley County deputy from 1999 to 2000, Doc. No.  19-19, p. 14).

[9] Terry Keif indicated that her uncle is John Vanorsdale, who the chief deputy in the federal building for eight to twelve years  and was on the sheriff's department for a long time. (Doc. No. 19-19, pp. 16-17).

[10] Tony Cook indicated that had twenty-three ears of service with federal law enforcement, and more specifically, with the IRS police. (Doc. No. 19-19, p. 12).

held that the failure to remove a juror for cause, with the result that the defendant had to use a preemptory challenge to remove the potential juror, does not violate the defendant's right to an impartial jury. See <u>Ross v. Oklahoma</u>, 487 U.S. 1 (1988).

The third juror, Mr. Cook, did serve on the petit jury. However, Petitioner has failed to show that Mr. Cook held any bias.[11] Petitioner appears to rely on the fact that Mr. Cook was a former employee of the Federal Protective Service, i.e. IRS Police. However, the criminal case against Petitioner dealt with sexual abuse, and Mr. Cook's previous career in tax enforcement does not create any legitimate presumption of bias. See <u>Tinsley v. Borg</u>, 895 F.2d 520, 529 (9th Cir. 1990) ("We will not presume bias merely because a juror works in law enforcement or is a federal government employee.")

Petitioner next claims that Counsel provided ineffective assistance by failing to "present proper evidence at trial." Petitioner does not provide any more information than this vague language, and there is no way to determine to what actions by Counsel he is specifically referring. This claim is insufficiently pled, unable to be judged on its merits, and should therefore be dismissed.

Finally, Petitioner claims that Counsel provided ineffective assistance by failing to properly interview the witnesses he mentioned in his opening statement. The trial transcript establishes that during his opening statement, defense counsel mentioned the victim, Lauren, the victim's sister, Renee, the victim's grandmother, Lorraine Wright, the victim's mother, Karen, the victim's Eastridge counselor, Ms. Magnette, the investigating officer, and Christina Milton, with whom the petitioner had an affair, (Doc. 21-19, pp. 76-83). Counsel for the State

---

[11] Mr. Cook was thoroughly questioned by the trial judge with respect to his ability to serve as a juror. (Doc. No. 19-19, pp. 12-14).

called Ms. Magnette, the victim, and the investigating officer. (Doc. No. 21-20). Defense counsel cross-examined each of the State's witnesses. On direct, Defense counsel called character witnesses Patricia Sanderson, David Leonard, the victim's sister, the victim's mother, Petitioner's computer expert, Jeffrey Wogan, and Petitioner. (Do. No. 19-23). Accordingly, the only individual's mentioned by defense counsel in his opening statement and not called to testify by either side was the victim's grandmother and Christina Milton, with whom the plaintiff had an affair.

It appears that Petitioner's complaint with respect to not interviewing individual's mentioned in the opening statement centers on Christina Milton. Petitioner maintains that there was no strategic or tactical reason to include any reference to Ms. Milton in the opening statement. Moreover, Petitioner alleges that his counsel's failure to produce the promised evidence left a perception in the jurors' mind that her promised testimony could only be damaging to the defense or that she would not support defense counsel's theory. Petitioner also argues that admission of collateral crime evidence is highly prejudicial and improper, and/or that admission of collateral crime evidence constitutes reversible error. However, defense counsel's sole reference to Ms. Milton is as follows: "Mr. May was married. He was trying to perform for his wife and the evidence will show that he had relations with another person outside of his marriage, Christina Milton, and we'll have evidence of that. So he didn't need his daughter for that." (Doc. No. 19-20, pp. 83-84). Clearly, adultery is not an aggravated crime. Furthermore, although Ms. Milton was 18 when the alleged sexual abuse of Petitioner's daughter began in late 2000, there was no evidence introduced as to when Petitioner and Ms. Milton became intimate. Accordingly, counsel's decision to mention the affair cannot be seen

as objectively unreasonable. Moreover, there is no evidence that further preparation would have benefitted Petitioner.

   i.   **Counsel Failed to Review PSR with Petitioner Prior to Sentencing**

Petitioner next claims that Counsel provided ineffective assistance by failing to review the pre-sentence report with him prior to sentencing. This claim is without merit because Petitioner has not shown that Counsel's actions prejudiced his defense.

Petitioner attempts to show prejudice by alleging that the PSR contained a number of inaccuracies that contributed to him receiving an excessively high sentence. However, Petitioner fails to point out even one specific inaccuracy in the PSR, nor does he point out where the court relied on the alleged inaccuracies in the determination of his sentence. Such a broad and unsupported statement does not prove prejudice for the purposes of an ineffective assistance of counsel claim.

**2. Appellate Counsel Failed to Pursue Viable Appellate Issues**

Although Petitioner does not specify whether he is referring to counsel who represented him on direct appeal, or counsel who represented him on his state habeas appeal, the undersigned believes that he is referring to counsel on direct appeal since this issue was raised in his state habeas petition. Specifically, in his state petition, Petitioner alleged that Appellate Counsel S. Andrew Arnold, failed to challenge the multiple undifferentiated carbon-copy counts of West Virginia Code § 61-8D-5, as contained in the indictment returned by the Grand Jury of Berkeley County, West Virginia, as a violation of the constitutional prohibition against double jeopardy. In addition, Petitioner alleged that appellate counsel, S. Andrew Arnold, failed to challenge the process by which prospective members of the Grand Jury and

Petit Jury was selected by the Circuit Court of Berkeley County, West Virginia. However, in his federal petition, beyond alleging that Appellate Counsel failed to pursue viable appellate issues, he offers nothing further.

The Strickland standard applies to appellate counsel. Smith v. Robbins, 528 U.S. 259, 285 (2002). Under this standard, appellate counsel is not required to raise every non-frivilous issue requested by the appellant. Jones v. Barnes, 463, U.S. 745, 751 (1983). The Supreme Court has recognized that, "since beyond memory," experienced advocates "have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at least a few key issues." Jones, 463 U.S. at 751-52. The exercise of judgment in framing issues on appeal makes it "difficult to demonstrate that [appellate] counsel was incompetent under Strickland for omitting a particular argument." Smith, 528 U.S. at 288.

Here, Petitioner has failed to overcome the presumption against finding appellate counsel incompetent for choosing to omit a particular argument. Not only has Petitioner failed to identify any additional claim that appellate could have made, he has offered nothing to demonstrate that Counsel's choice of appellate claims was anything more than a tactical decision that was reasonable under the circumstances.

## 3. Petitioner was Denied an Appropriate Sentence

Petitioner next claims that he was denied an appropriate sentence, in violation of the Eighth Amendment to the United States Constitution. Specifically, it is Petitioner's position that W. Va. Code § 61-8D-5(a), prior to July 1998, prohibited sexual abuse by a parent but failed to set forth a criminal penalty for the violation. Petitioner therefore believes that the Court should

be unable to punish him for any sexual abuse occurring prior to July 1998. This claim is both procedurally defaulted and without merit.

As previously noted, a petition for a writ of habeas corpus filed in a federal district court by a prisoner in state custody shall not be granted, unless it appears that the applicant has exhausted the remedies available in the state courts, or if the state has waived the exhaustion requirement. 28 U.S.C. § 2254(b) (1) (A); 28 U.S.C. § 2254(b) (3). In West Virginia, a prisoner may exhaust his available state court remedies by stating his federal constitutional claim in a direct appeal, or by stating the claim in a petition for a writ of habeas corpus in a state circuit court, followed by an appeal of an adverse ruling to the West Virginia Supreme Court of Appeals. Moore v. Kirby, 879 F. Supp. 592, 593 (S.D. W. Va. 1995); McDaniel v. Holland, 631 F. Supp. 1544, 1545 (S.D. W. Va. 1986). A petition for a writ of habeas corpus filed under the original jurisdiction of the Supreme Court of Appeals that is denied with prejudice following a determination on the merits will also exhaust the prisoner's state court remedies. See Moore, 897 F. Supp. at 593.

A petitioner arguing that he has exhausted the available state remedies must show that the claim he raised in state proceedings is the same as the claim he now seeks to raise in his federal habeas proceeding. See Pitchess v. Davis, 421 U.S. 482, 487 (1975). The two claims must present the same operative facts and controlling legal principles. Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997).

Here, Petitioner has failed to exhaust his state court remedies for the instant claim. In his state habeas proceedings, Petitioner did not make any argument regarding the language of

W. Va. Code § 61-8D-5(a), nor did he make such an argument on his direct appeal.[12] Because Petitioner has failed to exhaust his state court remedies for the instant claim, it is procedurally defaulted and should be dismissed.

Beyond the procedural default, Petitioner's claim is without merit because all of the alleged incidents of sexual abuse occurred after the legislature amended W. Va. Code § 61-8D-5(a) to include the term "parent" in the punishment provision. Petitioner was convicted of counts one and two, both of which charged him with engaging in sexual contact with the victim in his capacity as a parent, guardian, or custodian between July 1998 and July 2001. The West Virginia legislature amended W. Va. Code § 61-8D-5(a) to include the term "parent" in the punishment provision in July 1998. Petitioner was clearly convicted of sexual abuse that occurred after the code provision was amended, and his argument is therefore illogical and without merit.

### 4. Petitioner was Denied a Fair and Impartial Jury

Petitioner claims that he was denied a fair and impartial jury, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Petitioner's claim has two components: (1) the Court selected the venire by calling prospective jurors in alphabetical order, as opposed to randomly, and (2) three biased individuals were included on the panel of twenty perspective jurors.

Turning to the first component, Petitioner claims that selecting the venire by calling prospective jurors in alphabetical order violated the United States Constitution by denying him

---

[12] Although Petitioner argued that he received a sentence that was in violation of the Eighth Amendment to the United States Constitution and Article III of the West Virginia Constitution, he simply argued that he sentence was grossly disproportionate to his convictions.

a fair and impartial jury. To support his contention, Petitioner refers to a West Virginia Supreme Court decision, State ex. rel. Stanley v. Sine, 594 S.E.2d 314 (W. Va. 2004). In Sine, the Court did hold that prospective jurors could not be called in sequential alphabetical order; however, the decision was based upon state law, not federal constitutional law.  There is no legal support for the idea that the calling of prospective jurors in alphabetical order violates the United States Constitution. Therefore, the first component of Petitioner's claim has no merit.

Moving on to the second component, Petitioner claims that the inclusion of three biased individuals on the panel of twenty prospective jurors violated the United States Constitution by denying him a fair and impartial jury. "A state court's finding regarding juror bias is a factual question entitled to a presumption of correctness on habeas review." Patton v. Yount, 467 U.S. 1025, 1038 (1984).  The burden of showing juror bias falls on the Petitioner. Irvin v. Dowd, 366 U.S. 717, 723 (1961). Petitioner cites no case law, either state or federal, for the proposition that a current or past service in law enforcement establishes automatic disqualification.  In fact, the mere fact of present or former employment in law enforcement or government is generally not sufficient to raise a presumption of bias. Tinsley v. Borg, 895 F.2d 520, 529 (9th Cir. 1990). See also United States v. Caldwell, 543 F.2d 1333, 1347 (D.C. Cir. 1974) (refusing to presume biased by a policeman's relative); Mikus v. United States, 433 F.2d 719, 723-24 (2nd Cir. 1970).

Furthermore, although West Virginia law may require a panel of twenty jurors free from bias, there is no such constitutional requirement. Rivera v. Illinois, 556 U.S. 148, 155 (2009). Instead, the constitution only requires that the petit jury be impartial. See United States v. Martinez-Salazar, 528 U.S. 304, 313 (2000) ("So long as the jury that sits is impartial the fact

that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.")

Here, Petitioner alleges that three of the twenty perspective jurors were biased. Two of those three, Mr. Womble and Mr. Keif, were not included on the petit jury. Because there is no constitutional requirement that perspective jurors be unbiased, Petitioner's claims related to Mr. Womble and Mr. Keif are without merit. The other juror, Mr. Cook, was included on the petit jury. However, Petitioner's claim related to him is still without merit because Petitioner has failed to show that he was, in fact, biased. Petitioner puts forth no information other than that Mr. Keif was a former employee of the Federal Protective Service, i.e. IRS Police. This is simply not enough to overcome the presumption that state court findings regarding potential juror bias are correct.

## 5. The Court Admitted Inauthentic Evidence that Should Have Been Suppressed

Petitioner next claims that he was denied due process of law when the Court admitted evidence of statements he gave to police as they executed a search warrant on his home. Petitioner contends that the evidence should have been inadmissible because, at the time that the statements were made, he was (1) under *de facto* arrest, (2) not promptly presented to a magistrate, and (3) not mentally able to give the statements voluntarily.

Petitioner first claims that the statements should have been found to be inadmissible because he was under *de* facto arrest at the time that they were made. A detention becomes a *de facto* arrest if its scope and intrusiveness are (1) beyond that which is associated with investigative detentions, and (2) unnecessary under the circumstances. United States v. Bloomfield, 40 F.3d 910, 916-17 (8th Cir. 1994). When officers are executing search warrants

for contraband in a residence, they may subject the occupants to more lengthy and intrusive detentions than would be permitted on the street. Michigan v. Summers, 452 U.S. 692, 703 (1981).

In this particular case, Trooper Burnette executed a search warrant at Petitioner's house on March 21, 2001. The warrant was for computers and items on the computer. Trooper Burnette arrived at Petitioner's home at approximately 9:00 a.m. Petitioner was in his bedroom asleep. The victim answered the door and then went to Petitioner's bedroom door to wake him up. Petitioner originally would not come out. After hearing that there was a search warrant, Petitioner came out of his bedroom and sat on the couch as directed. Trooper Burnette, with the assistance of the victim, was able to find pornographic material on the computer. He downloaded copies of the porn onto a zip drive with the assistance of Petitioner. He then took Petitioner's statement, beginning at 2:23 p.m., after reading him his Miranda rights. Therefore, it would appear that search took approximately five hours from the time the officer arrived until Petitioner began his statement. (Doc. No. 19-17, pp. 85-90). This period of time is clearly reasonable under the circumstances, especially when considering that the officers were attempting to preserve evidence contained on the computer. Moreover, Petitioner points to no evidence that the investigating officers needlessly prolonged the execution of the warrant.

Petitioner next claims that the statements should have been found to be inadmissible because he was not promptly presented to a magistrate. In making this argument, petitioner

appears to invoke the NcNabb-Mallory[13] rule as addressed in <u>Corley v. United States</u>, 556 U.S. 303, (2009). Here, Petitioner was not arrested prior to making the statements in question. Nor was he arrested after making his statement. Therefore, the officers on the scene were under no obligation to take Petitioner before a magistrate. Furthermore, the McNabb-Mallory rule, which seeks to exclude confession made during an unreasonable period of detention, is a rule of criminal procedure. <u>Van Ermen v. Burke</u>, 398 F.2d 329 n. 1 (7th Cir. 1968) (finding the rule inapplicable in habeas corpus proceedings because 'it is based on court enforcement of the congressional mandate found in Rule 59(a) of the Federal Rules of Criminal Procedure... [T]he rule is not of constitutional dimensions. It does not reach to invalidate petitioner's conviction as being constitutionally infirm.'). Therefore, Petitioner's attempt to rely on the McNabb-Mallory rule fails, as it is not recognized in the scope of a petition for habeas corpus. <u>Chapman v. Hardy</u>, 2012 WL 1988436 (N.D. Ill., 2012).

Petitioner lastly claims that the statements should have been found to be inadmissible because, when the statements were made, he was under the influence of Nyquil and therefore not mentally able to give a voluntary statement. Petitioner has presented no evidence in support of this contention.

## 6. Counsel for the State Improperly Communicated with the Jury

Petitioner next claims that he was denied due process of law when Counsel for the State improperly communicated with the jury. Specifically, Petitioner argues that the jury overheard an off-the-record conversation between Counsel for the State and the trial court judge regarding Petitioner's affair with Christina Milton.

---

[13] Confessions made during periods of detention that violate the prompt present requirement of Rule 5(a) are rendered inadmissible. <u>McNabb v. United States</u>, 318 U.S. 332, 349 (1943),

This claim is without merit because Petitioner offers no proof that this alleged conversation ever took place. Furthermore, even assuming that the conversation did occur, it would not have resulted in any prejudice towards Petitioner; Counsel for Petitioner previously alerted the jury to the affair with Ms. Milton during his opening statement.

## 7. Improper Indictment

Petitioner next claims that he was denied due process of law when the indictment failed to specify a specific date or distinguish between the sexual contact for any given date. This claim has no merit because, even under West Virginia law, the indictment was sufficient.

Under West Virginia law, "An indictment [or information] for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged, and enables the court to determine the statute on which the charge is based. Syl. pt. 3 State v. Donald S.B., 399 S.E.2d 898, 899 (W. Va. 1990). Furthermore, "no indictment or other accusation shall be quashed or deemed invalid...for omitting to state or stating imperfectly, the time at which the offense was committed, when time is not of the essence of the offense[.]" W. Va. Code. § 62-2-10.

Here, none of the offenses set forth in the indictment includes an element of time. Therefore, the indictment is sufficient under West Virginia law even though it only includes date ranges, instead of the specific dates on which the offenses were committed.

## 8. Counsel for the State Withhold Relevant Evidence Prior to Trial

Petitioner next claims that he was denied due process of law when Counsel for the State withheld relevant evidence prior to trial. Specifically, Petitioner argues that Counsel for the State impermissibly withheld evidence concerning the victim's complete sexual history. This

claim is without merit because Petitioner has failed to show that such evidence is material to his guilt or punishment.

The prosecution violates a defendant's due process rights when it withholds exculpatory or impeachment evidence that is material to the defendant's guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963). Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. United States v. Bagley, 473 U.S. 667, 682 (1985).

Here, Petitioner has failed to show that evidence concerning the victim's complete sexual history is material to his guilt or punishment. There is simply no reason to believe that the disclosure of such evidence would have had any effect on the outcome of Petitioner's trial. In fact, the evidence very likely would not have even been admissible at trial. See Syl. pt. 1 State v. Guthrie, 518 S.E.2d 83, 87 (W. Va. 1999) ("As a general matter, West Virginia Code § 61-8B-11(b) bars the introduction of evidence, in a sexual assault prosecution, concerning (1) specific instances of the victim's sexual conduct with persons other than the defendant, (2) opinion evidence of the victim's sexual conduct, and (3) reputation evidence of the victim's sexual conduct.").

**9. Petitioner was Unrepresented at the Preliminary Hearing**

Petitioner maintains that he was denied his right to counsel during his preliminary hearing. The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to…have the assistance of counsel for his defense." The right attaches when the state initiates adversary judicial proceedings against

an accused "by way of formal charge, preliminary hearing, indictment, information, or arraignment. <u>Kirby v. Illinois</u>, 406 U.S. 682, 689 (1972).

Petitioner did not raise this issue in his direct appeal.  Although Petitioner raised this issue before the state habeas court, he did not raise it in his state habeas appeal. Therefore, this issue is not properly exhausted.[14] Moreover, the petitioner has no available state remedies due to his conduct, and he is unable to show cause and prejudice for his default.  Therefore, this court cannot grant him relief.  <u>See</u> <u>e.g.</u>, <u>Gray v. Netherland</u>, 518 U.S. 152, 162 (1996)("Because petitioner makes no attempt to demonstrate cause or prejudice for his default his state habeas proceedings, his claim is not cognizable in a federal suit for the writ."). Consequently, this ground for relief is procedurally defaulted and should be dismissed.

## 10.  PERJURED TESTIMONY

The petitioner next alleges that his due process rights were violated because the victim gave "inauthentic testimony." It would appear that Petitioner is arguing that the victim gave false or perjured testimony that was "suggested" to her by questions asked of her by psychologist, Bridget Magnette, regarding the abuse and neglect proceeding conducted by the DHHR in 1998. Although not fully developed by either Petitioner or Respondent, a reading of the record in this matter reveals that the DHHR was involved in investigating Petitioner on two separate occasions.  The first was in 1998, when the victim was eleven years old.  It would

---

[14] As noted elsewhere in this Report and Recommendation, Section 2254(b) of Title 28 of the United States Code states that a petition for writ of habeas corpus filed in a Federal district court by a prisoner in State custody shall not be granted, unless it appears that the applicant has exhausted the remedies available in the State Courts, or if the State has waived the exhaustion requirement.  In West Virginia, an applicant may exhaust his available State court remedies either by stating such claims in a direct appeal or in a petition for a writ of habeas corpus in a State circuit court pursuant to W.Va. Code § 53-4A-1, followed by an appeal from any adverse ruling to the West Virginia Supreme Court of Appeals.  A petition for a writ of habeas corpus filed under  the original jurisdiction of the Supreme Court of Appeals that is denied with prejudice following a determination on the merits will also exhaust State court remedies.

further appear that the victim remained in the home with Petitioner, and they apparently were involved in counseling. (Doc. No. 19-17, pp. 21-22). The second investigation began in 2001, and was ongoing during the criminal investigation which led to Petitioner's eventual conviction.

A criminal defendant is denied due process of law when false testimony is used against him at trial. Nupee v. Illinois, 360 U.S. 264, 269 (1959). To state a successful habeas claim under Napue, a criminal defendant must prove that "the prosecution knew, or should have of the perjury." United States v. Agurs, 427 U.S. 97, 103. (1976).

The petitioner claims that the victim was suffering from false memory syndrome brought on by her therapy sessions with Bridgette Magnette. However, beyond bald assertion, there is simply no evidence to support his allegation. Ms. Magnette testified that she was a supervised psychologist, who had treated the victim for substance abuse pursuant to a directive from the Berkeley County Board of Education. (Doc. No. 19-20, p. 96). On March 13, 2011, the victim came to her second and final session with visible cuts on her arms. She revealed that Petitioner had been sexually abusing her. (Id. At 97-98). As a mandatory reporter[15], Ms. Magnette reported this to the DHHR. Nowhere in the record, is there any evidence that even suggests that Ms. Magnette was aware of the 1998 investigation or that she questioned the victim regarding those allegations. Accordingly Petitioner has offered no evidence that the victim actually perjured herself, let alone that the prosecution knew of her intention to do so.

**11. Petitioner was Incompetent to Stand Trial**

---

[15] "When any medical dental, or mental health professional.......has reasonable cause to suspect that is child is neglected or abused or observes the child being subjected to conditions that are likely to result in abuse or neglect, such person shall immediately, and not more than forty-eight hours after suspecting the abuse, report the circumstances or cause a report to be made to the Department of Heal and Human Resources...." W.Va. Code § 49-6A-2.

Petitioner next claims that he was denied due process of law when he was tried and convicted despite being incompetent to stand trial. This claim is without merit because the record indicates that Petitioner was competent to stand trial.

The trial of an incompetent defendant violates that defendant's due process rights. Medina v. California, 505 U.S. 437, 453 (1992). Therefore, a trial court has an independent obligation to ensure that a defendant is not incompetent, even if the defendant does not request a competency evaluation. Id.

A person is incompetent to stand trial when he is charged with a crime and, because of mental illness or defect, is unable to: (1) understand the nature and purpose of the proceedings against him, or (2) make or assist in making his defense. In other words, a criminal defendant may not be tried unless he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding…[and] a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402 (1960).

"A habeas petitioner raising a substantive claim of incompetency, is not entitled to a presumption of incompetency and must demonstrate his incompetency by a preponderance of the evidence." Walker v. Attorney General for the State of Oklahoma, 167 F.3d 1339, 1343 (10th Cir. 1999) (internal citations omitted). To obtain habeas relief on a substantive incompetence claim, a habeas petitioner must present evidence which is sufficient "to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to his mental capacity to stand trial" Tinkerfield v. Pitcher, 199 F. Supp. 2d 637, 653 (E.D. Mich. 2002).

Here, Petitioner has failed to demonstrate his incompetency by a preponderance of the evidence. Nothing in the record indicates that Petitioner lacked the ability to understand the

proceedings against him or to assist his attorney in preparing his defense. In fact, the record appears to suggest otherwise. Specifically, Petitioner attended both pre-trial hearings, and the state habeas court noted that he was "engaged...and in fact had an extensive discussion with the judge during the September 25 pre-trial hearing concerning the state's plea offer." In addition, Petitioner testified in his own defense, and the state habeas court noted that the testimony was "lucid" and demonstrated Petitioner's "ability to recall the events relevant to the trial."

## 12. Alleged Victim was Allowed to Testify Without any Proper Psychiatric Determination of her Competency

Petitioner next claims that he was denied due process of law when the victim was permitted to testify without a prior psychiatric determination as to whether she was competent. This claim is without merit because the record fails to show that there was a compelling need for a psychological evaluation of the victim.

Under West Virginia law, a defendant requesting an additional psychological exam of the victim must present the trial court with evidence that there is a compelling need or reason. Syl. pt. 3, State v. Delaney, 417 S.E.2d 903, 904 (W. Va. 1992). The court must then balance this need against the intrusiveness of the exam, the victim's age, the physical or psychological effects of the exam, the probative value of the exam, the presence of alternative evidence on the same issue, and the remoteness of time between the incident and the exam. Id. "The question of competency of a witness to testify is left largely to the discretion of the trial court and its judgment will not be disturbed [on appeal] unless shown to have been plainly abused resulting in manifest error." Syl. pt. 8, State v. Wilson, 207 S.E.2d 174, 177 (W. Va. 1974).

Here, the record fails to show that there was a compelling need for a psychological evaluation of the victim. Although the assaults began when she was eleven years old, the victim was seventeen years old by the time of the trial. Furthermore, there is no evidence that the victim was unable to act as a competent witness. In fact, the victim testified at the September 3, 2003 pre-trial hearing, appearing cogent and lucid.

### 13. Law Enforcement Improperly Built a Case Against Petitioner Through the Guise of a Civil Proceeding

Petitioner next claims that he was denied due process of law when law enforcement improperly built a criminal case against him through the guise of a civil (abuse/neglect) proceeding. Petitioner appears to claim that the State, under the pretense of obtaining relevant information for its civil abuse and neglect proceeding, tricked him into incriminating himself by providing Trooper Burnette with a pre-trial statement.

The West Virginia Supreme Court has approved concurrent civil abuse and neglect proceedings and criminal proceedings against the same individual. See State ex. Rel. West Virginia Dept. of Health and Human Resources v. Fox , 624 S.E. 2nd 834, 837 (W.Va. 2005)("In addition to the civil abuse and neglect proceedings to determine whether Sean should be removed from his parent's custody, criminal proceedings were also instituted against [the defendant]."); In re Daniel D., 562 S.E.2$^{d}$ 147, 157 n.11 (W.Va. 2002) (statements made during civil abuse and neglect proceeding admissible as impeachment evidence in criminal proceeding); State ex. Rel. Lowe v. Knight, 544 S.E.2d 61, 65 (W.Va. 2000)(criminal plea agreement which includes provision dismissing concurrent civil abuse and neglect petition unenforceable as matter of public policy).

Here, a DHHR social worker accompanied the investigating officers, served Petitioner

with an abuse and neglect petition, and took custody of Petitioner's children at the same time the officers were executing the search warrant. However, prior to taking his statement, Petitioner was Mirandized, and the statement was taken by a West Virginia State Trooper and not the social worker. (Doc. No. 19-17, p. 17). In addition, the pre-printed Miranda form clearly stated that Petitioner was being investigated for the crime of sex abuse. (Doc. No. 19-16). Accordingly, there is nothing to suggest that the investigating officers acted in concert with the DHHR to trick him into incriminating himself.

### 15. Prosecuting Attorney Failed to Fulfill his Duties as an Officer of the Court

Petitioner's final claim is that he was denied due process of law by various actions either undertaken or neglected by the Prosecutor in his case. Specifically, Petitioner alleges that:

A. Gregory K. Jones, Assistant Prosecuting Attorney for Berkeley County, West Virginia, failed to fulfill his duty as an officer of the Court by asserting to the alphabetical selection of potential jurors in contraventions of statutory law;

B. Gregory K. Jones, Assistant Prosecuting Attorney for Berkeley County, West Virginia, failed to fulfill his duty as an officer of the Court by failing to secure an unbiased jury panel for Petitioner when Michael Womble, a law enforcement officer, was included in the panel of twenty prospective jurors "free from exception."

C. Gregory K. Jones, Assistant Prosecuting Attorney for Berkeley County, West Virginia, failed to fulfill his duty as an officer of the Court when he failed to correct his own proper assertion that Ms. Christina Milton was not an adult at the time of her alleged affair with Petition.

D. Gregory K. Jones, Assistant prosecuting Attorney for Berkeley County, West Virginia, failed to fulfill his duty as an officer of the Court by failing to disclose his intention to dismiss the recidivist claim in the expired plea letter forwarded to Petitioner's counsel, Keith L. Wheaton.

E. Gregory K. Jones, Assistant prosecuting Attorney for Berkeley County, West Virginia, failed to fulfill his duty as an officer of the Court by failing to provide Petitioner access to a letter and other evidence mailed to Gregory Jones and the West Virginia State Police in July 1998. In said letter and other evidence, an agent of the WVDHHR had substantiated that the victim in the case alleged sexual misconduct

occurred prior to the revision of W.Va. Code, § 61-8D-5 in 1998, when the sanction for the alleged offense was five to fifteen years rather than the ten to twenty yeas mandated by current version of W.Va. Code § 61-8D-5.

F.   Gregory K. Jones, Assistant prosecuting Attorney for Berkeley County, West Virginia, failed to fulfill his duty as an officer of the Court by failing to inform Petitioner of any specific changes, modification or alternations between the indictment returned by the Grand Jury in 2001 and the indictment returned by the Grand Jury in 2002 as they allegedly constituted the same crimes.

G.   Gregory K. Jones, Assistant Prosecuting attorney for Berkeley County, West Virginia, failed to fulfill his duty as an officer of the Court by failing to inform the Honorable Christopher C. Wilkes that petitioner's sworn statements were entered into the record by Senior Trooper E.D. Burnett and ruled upon in the previous abuse/neglect adjudication, wrongly.

"A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violation will not be reviewed." Syl. Pt. 4, State ex rel. McMannis v. Mohn, 163 W. Va. 129 (1979). Each of the possible violations listed by Petitioner, even if taken as true, do not rise to the level of a constitutional violation, and Petitioner's claim therefore is without merit.[16]

**The State Habeas Court was not Mandated to Hold an Omnibus Evidentiary Hearing Before Denying State Habeas Relief.**

In response to the petition, Respondent argues that Petitioner claims that the state habeas court was constitutionally mandated to hold an omnibus habeas corpus evidentiary hearing before issuing the final order. The undersigned is unable to locate that claim within Petitioner's original petition or supplemental petition. However, in reply to the response,

---

[16] In fact, most of the allegations were raised as separate claims within the state habeas petition and the federal habeas petition, without asserting prosecutorial "misconduct." Those claims failed to reach the level of constitutional error, and the additional allegation of prosecutorial misconduct does not, per se, make them constitutional violations.

Petitioner argues that there is "no serious question than an evidentiary hearing is warranted in this case..." (Doc. No. 37, p. 33).

Under federal law, a Petition who has diligently pursued his habeas corpus claim in state court is entitled to an evidentiary hearing in federal court on facts not previously developed in state court, if the facts would entitle him to relief, and if he can satisfy one of the six criteria set forth by the Supreme Court in <u>Townsend v. Sain</u>, 372 U.S. 293, 313 (1963). [17]

Here, although Petitioner has included numerous claims for relief, none of them require further development. As required by <u>Townsend</u>, the state habeas court thoroughly reviewed the trial court record. It laid out each claim raised by petitioner and issued conclusions of law and findings regarding its decision to deny the petition. In addition, it set forth specific findings concerning the decision to issue a final order without an evidentiary hearing. Accordingly, Petitioner is not entitled to an evidentiary hearing in this Court.

### Analysis of Petitioner's Motion to Amend

Petitioner's motion to amend should be denied because Petitioner has failed to exhaust the available state remedies for the four claims contained within it, thereby making the proposed amendment futile. See <u>Foman v. Davis</u>, 371 U.S. 178 (1962) (court may deny motion to amend if amendment would be futile). A petitioner may amend or supplement his application for a writ of habeas corpus "as provided in the rules of procedure applicable to civil actions. 28 U.S.C. § 2242. According to the Federal Rules of Civil Procedure, "a party may amend its pleading once as a matter of course before being served with a responsive pleading."

---

[17] The six circumstances are: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or, (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing.

Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave…The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Again, a petition for a writ of habeas corpus filed in a federal district court by a prisoner in state custody shall not be granted, unless it appears that the applicant has exhausted the remedies available in the state courts, or if the state has waived the exhaustion requirement. 28 U.S.C. § 2254(b)(1)(A); 28 U.S.C. § 2254(b)(3). In West Virginia, a prisoner may exhaust his available state court remedies by stating his federal constitutional claim in a direct appeal, or by stating the claim in a petition for a writ of habeas corpus in a state circuit court, followed by an appeal of an adverse ruling to the West Virginia Supreme Court of Appeals. Moore v. Kirby, 879 F. Supp. 592, 593 (S.D. W. Va. 1995); McDaniel v. Holland, 631 F. Supp. 1544, 1545 (S.D. W. Va. 1986). A petition for a writ of habeas corpus filed under the original jurisdiction of the Supreme Court of Appeals that is denied with prejudice following a determination on the merits will also exhaust the prisoner's state court remedies. See Moore, 897 F. Supp. at 593.

A petitioner arguing that he has exhausted the available state remedies must show that the claim he raised in state proceedings is the same as the claim he now seeks to raise in his federal habeas proceeding. See Pitchess v. Davis, 421 U.S. 482, 487 (1975). The two claims must present the same operative facts and controlling legal principles. Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997).

Here, Petitioner has failed to exhaust the available state remedies for the four claims articulated in his motion to amend. Although Petitioner addressed the constitutional effectiveness of both his trial and appellate counsel in state court, Petitioner has never

previously addressed the specific ineffective assistance claims now presented in his motion to amend.  See Weeks v. Jones, 26 F.3d 1030, 1044 (11th Cir. 1994) ("We have held that presentation of some ineffective instances in state court does not preserve in federal court other or all instances of ineffective assistance that were not presented in state court claims..."). Moving on to the other two claims presented in Petitioner's motion to amend, there is no mention of anything resembling these claims in either his direct appeal or state habeas appeal; he has therefore clearly failed to exhaust the available state remedies for these two claims.

Because Petitioner has failed to exhaust the available state remedies for the four claims articulated in his motion to amend, the motion should be denied as futile.

**Recommendation**

In consideration of the foregoing, it is the undersigned's recommendation that Respondent's motion for summary judgment (Doc. No. 19) be **GRANTED**; Petitioner's motion to amend (Doc. 38) be **DENIED**; and the Petitioner be **DENIED AND DISMISSED WITH PREJUDICE.**

Within fourteen   (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Court Judge.  Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result i him in him and n waiver of the right to appeal from a judgment of this Court based upon such Recommendation.  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright

50

v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

August 9, 2012

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE